IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIAM LANIER ELLIS, SR. #259380,  )
                                    )
           Plaintiff,           )
                                      )
     v.                          )       CASE NO. 3:07-CV-920-MHT
                                    )           [WO]
                                    )
TINA RILEY-PELFREY, et al.,      )
                                    )
          Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by William Lanier Ellis, Sr. ["Ellis"], a state inmate, in which he challenges the constitutionality of medical treatment provided to him during his confinement at the Russell County Jail in 2007.  Specifically, Ellis complains that he did not receive adequate treatment for chronic back pain, anxiety and seizures. Ellis names Tina Riley-Pelfrey, a nurse employed by the Russell County Jail; Danny Bussey and John Stihl, correctional officers for the jail; Loetta Holland, the jail administrator; and Spud Warr, a physician under contract with the jail; as defendants in this cause of action.[1]  Ellis seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.

---

[1]The defendants advise that the correct name for officer Stihl is John Still.  In the interest of clarity, the court will refer to this defendant as he is initially identified by the plaintiff.

The defendants filed a special report and supporting evidentiary materials addressing Ellis' claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary judgment.  *Order of January 7, 2008 - Court Doc. No. 41*.  Moreover, in response to the aforementioned order, Ellis filed a motion to dismiss his claims against defendants Riley-Pelfrey, Bussey, Stihl and Holland.  *Motion to Dismiss - Court Doc. No. 42* at 2.  Thus, this case is now pending on the defendants' motion for summary judgment and the plaintiff's motion to dismiss.  Upon consideration of these motions, the evidentiary materials filed by the defendants and Ellis' response filed on January 15, 2008, the court concludes that the plaintiff's motion to dismiss and the motion for summary judgment filed on behalf of defendant Warr are each due to be granted.

## II.  DISCUSSION

### A.  Plaintiff's Motion to Dismiss

On January 15, 2008, Ellis filed a motion to dismiss in which he  "moves to dismiss all part[ies] except Dr. Warr or any ... insurance therein covering Dr. Warr.  Namely, Tina Riley-Pelfrey, Danny Bussey, Loetta Holland and John Still." *Plaintiff's Motion to Dismiss - Court Doc. No. 42* at 2.  Based on the evidentiary materials filed herein, and as Ellis seeks to proceed only on his claims against defendant Warr, the court concludes that the motion to dismiss is due to be granted and his claims against all defendants, with the exception of Dr. Warr, should be dismissed as requested in the

motion.

## B. Summary Judgment Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

Defendant Warr has met his evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [jail medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the properly supported motion for summary judgment filed herein, Ellis is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim of a constitutional violation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1),

*Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S.

at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible

6

on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Ellis fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment with respect to his claim of deliberate indifference against Dr. Warr. *Matsushita*, *supra*.

## C. Alleged Deliberate Indifference by Dr. Spud Warr

Ellis complains that Dr. Warr acted with deliberate indifference to chronic pain that Ellis suffered as a result of a protruding disc in his spine. In support of this

assertion, Ellis challenges the course of treatment undertaken by Dr. Warr – i.e., the strength of the medications prescribed – and argues that he should have instead been prescribed Schedule II narcotics such as methadone and morphine for treatment of his chronic pain.  Ellis also challenges the treatment he received for anxiety attacks, depression and seizures. Dr. Warr denies that he acted with deliberate indifference to Ellis' medical or mental health needs and, instead, maintains that  he provided Ellis with appropriate treatment for each of his conditions.

Medical personnel may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the personnel know that the inmate faces "a substantial risk of serious harm" and with such knowledge disregard that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements,  an inmate must first show "an objectively substantial risk of serious harm ...

exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate

9

indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, a facility's medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our

10

cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d

1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth

Amendment simply because their opinions concerning medical treatment conflict with

that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury

must be a strong likelihood, rather than a mere possibility before a [defendant's] failure

to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537

(11th Cir. 1990) (citations and internal quotations omitted). Thus, in order to survive

summary judgment motion on his deliberate indifference claim, Ellis is "required to

produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50

F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To evade entry of

summary judgment on a properly supported motion, plaintiff must produce sufficient

evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective

awareness of this risk on the part of the defendants; (3) the defendants responded to such

risk in an objectively unreasonable manner; and (4) the actions/omissions of the

defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029.

The medical records filed herein demonstrate that during his incarceration in the Russell County Jail in 2007 medical personnel provided treatment to Ellis for his back pain, depression and seizures in accordance with their assessment of each of his conditions. *Defendants' Exhibit C (Inmate Medical Records of William Lanier Ellis, Sr.) - Court Doc. No. 39-3 thru Court Doc. No. 39-4.* The undisputed evidentiary materials before the court demonstrate that the medical staff of the Russell County Jail routinely examined Ellis, consistently provided Ellis non-prescription medications upon his request, evaluated his complaints, obtained and reviewed voluminous medical records from outside sources, prescribed an extra-thick mattress, ordered an MRI of his back, consulted with a free-world neural radiologist, referred Ellis to a chiropractor for decompression therapy, scheduled Ellis for appointments with a neurologist and neurosurgeon, ordered x-rays of the plaintiff's back, scheduled Ellis an evaluation by the East Alabama Mental Health Clinic and rendered extensive treatment to Ellis in accordance with their professional judgment. *Id*.; *Defendants' Exhibit B (Affidavit of Licensed Practical Nurse Tina Riley-Pelfrey) - Court Doc. No. 39-2 at 2-3*; *Defendants' Exhibit D (Affidavit of Dr. Spud Warr) - Court Doc. No. 39-5 at 3-4.* The evidentiary materials likewise establish that Dr. Warr prescribed various medications to alleviate pain and swelling associated with Ellis' back condition. *Defendants' Exhibit C (Inmate Medical Records of William Lanier Ellis, Sr.) - Court Doc. No. 39-3 at 3, 17, 25, 33, 70*

and 84 -- *Court Doc. No. 39-4* at 2, 19, 58-59 and 98-102.  Dr. Warr and free-world

mental health professionals likewise prescribed anti-depressant and anti-anxiety

medications.  *Id*.

In response to the deliberate indifference claim presented by Ellis, nurse Tina

Riley-Pelfrey stated that:

> It is a violation of the policies of the Russell County Jail to deny necessary medical attention, care or medication to an inmate.
>
> It is the policy of the medical staff of the Russell County Jail that patients are not given any medication that contains a narcotic ingredient.
>
> At the time the Plaintiff was ... transferred in to the Russell County Jail [in March of 2007] from the Muscogee County Jail, I did a fresh admission screening [on this inmate's medical and mental health history]. I also obtained the Plaintiff's medical records from the Lee County Jail. The only medication the Plaintiff brought with him from Muscogee County was phenobarbital.  The Plaintiff did not bring any prescriptions with him, and the Plaintiff never asked me to call a doctor or pharmacist and check on any prescriptions.  [*Defendants' Exhibit C (Inmate Medical Records of William Lanier Ellis, Sr. - March 9, 2007 Intake Screen) - Court Doc. No. 39-3* at 3.]
>
> Phenobarbital is a seizure medication.... At intake, [Ellis] informed us that he had been taking 60mg three times a day.  The Lee County Jail had reduced his dosage to 60mg twice a day.  We increased his dosage to 64.8mg twice a day.  The Plaintiff has [as of this date] never complained of seizures while in the Russell County Jail.
>
> During the Plaintiff's incarceration, we provided him with a great deal of tylenol, motrin, and other pain relievers.
>
> In June, Dr. Warr started the Plaintiff on Tramadol and Naproxin, anti-inflammatory pain relievers.  In August, Dr. Warr started the Plaintiff on Buspar, an anti-depressant.
>
> In response to his complaints of back pain, I gave the Plaintiff ... an extra-thick mattress.
> ***
> On June 11th, Dr. Warr asked me to get a copy of CAT scan and MRI reports that the Plaintiff had performed in 2005.  I got those

14

documents from MedCare in Columbus.  I have never received any documents from a Dr. Andrew Mecca, and I have no knowledge of said doctor.

*Defendants' Exhibit B (Affidavit of Licensed Practical Nurse Tina Riley-Pelfrey) - Court*

*Doc. No. 39-2 at 2-3*

Dr. Warr describes the treatment provided to Ellis for pain, depression and

anxiety as follows:

> I am not bound by another doctor's prescription or course of treatment.
>
> Upon the Plaintiff's incarceration in the Russell County Jail, I substituted Tremidol, a non-narcotic, Class 4 controlled substance, for the Plaintiff's current pain medication, which was potentially narcotic.  It is the policy of the medical staff of the Russell County Jail that patients are not given any medication that contains a narcotic ingredient.
>
> Although the Plaintiff informed me upon his intake that he has ruptured disks in his back, I could not verify that information [from review of prior radiological reports].  Therefore, I scheduled an MRI for the Plaintiff [on November 14, 2007].  After the MRI, I verified that the Plaintiff has a bulging disc in his back.  I consulted with Dr. Byeth, a neural radiologist, who informed me that the Plaintiff's situation might respond to chiropractic decompression as an alternative to surgery.  Therefore, I arranged to send the Plaintiff to a chiropractor in Auburn, Alabama.  The Plaintiff attended three such appointments, and declined to go anymore, stating that it was not helping.  After the Plaintiff quit going to the chiropractor, I called her and was informed that at least 6 treatments were needed to determine if that course of treatment was going to help [the patient's condition].
>
> I prescribed Buspar for the Plaintiff's anxiety, but he indicated that he did not like taking it, and it did not seem to be helping him.  Therefore, I discontinued that medication.  I scheduled an appointment at the East Alabama Mental Health Clinic for the Plaintiff, at which time they prescribed him a non-narcotic medication.  The Plaintiff is currently receiving that medication.
>
> The Plaintiff repeatedly complained of the pain in his back and that

the medication was not helping.  I arranged for the Plaintiff to see a neurologist, Dr. Candeno, who saw him once.  After that examination, Dr. Candeno informed me ... that he did not want to change the Plaintiff's current course of treatment.  Dr. Candeno also informed me that he did not want to see the Plaintiff again because the Plaintiff was hostile with him.

I first became aware of the Plaintiff's [November 20, 2007] slip and fall [and potential back injury] when Nurse Riley informed me of it shortly after it happened.  I instructed her to send the Plaintiff to the hospital for an x-ray.  The next day I was in the Jail, I read the hospital report, and discovered that the x-rays were negative, showing no injury to the back. Later, when visiting the hospital pursuant to the MRI mentioned above, I personally examined the x-rays along with the radiologist.  I currently have scheduled an appointment with a neurosurgeon for the Plaintiff.

*Defendants' Exhibit D (Affidavit of Dr. Spud Warr) - Court Doc. No. 39-5 at 3-4.*

Dr. Warr's synopsis of the treatment provided to Ellis is supported by the certified medical records filed in this case and there is nothing before the court which undermines the validity of these records.  *Defendants' Exhibit C (Inmate Medical Records of William Lanier Ellis, Sr. - July 24, 2007 Report of Dr. Jose A. Canedo) - Court Doc. No. 39-3* at 77-79 ( "Previous cervical spine x-rays [performed on September 3, 2002] showed normal vertebral body height, disk spaces, and alignment....  Lumbar spine x-rays [on the aforementioned date] showed no evidence of any obvious lumbar spine fracture or dislocation, described at S1 joint, normal, without signs of fracture. [November 2, 2000] MRI of lumbosacral spine, mild bulging disk at L5-S1, with no neural element compression.  At L5-S1, there is mild diffuse bulging disk centrally with no narrowing of the central canal and the canal appears to be normal....  [August of 2005] MRI of lumbosacral spine, [indicates] no change from previous evaluation, L5-S1

16

bulging disk, mild, with facet arthropathy bilaterally, L4-L5, with loss of disk height and hydration with bulging disk and signs of spondylosis indenting on the anterior thecal sac with posterolateral disk bulge in combination with facet arthropathy that narrows the neuroforamen, mild.").

Dr. Canedo determined that Ellis suffered "mild to moderate" degenerative disk disease and attempted to discuss his findings with Ellis when the inmate "became very upset to the point of arguing." *Id*. at 79. Dr. Canedo "made a suggestion of conservative exercises, physical therapy/stretching exercises, and medication.... At the end, [Dr. Canedo] had to stop [the] conversation [with Ellis] and explain that [he] was going to leave the decision of any further treatment to [the inmate's treating] physician.... The patient was very upset...." *Id*.

The MRI performed on November 14, 2007 in accordance with the order of Dr. Warr, showed:

> Overall alignment and vertebral body statures are normal. Assuming five lumbar disk spaces, the conus is unremarkable at L1-L2.
>
> At L4-L5, the disk space is very subtly narrowed and desiccated, associated with asymmetric broad-based disk protrusion, eccentric to the right. Maximal AP disk protrusion is 6 mm right paracentrally, 5 mm centrally, and 4 mm left paracentrally. The thecal sac is diffusely effaced anteriorly. Disk is contiguous with the right L5 roots bilaterally with the right L5 root displaced laterally and posteriorly. There is no lateral recess, neural foraminal or central stenosis.
>
> Other disk space levels are unremarkable.

17

Minimal degenerative changes are present in mid and lower lumbar facet joints.

Marrow signal is normal.  There is no paraskeletal soft tissue mass.

*Defendants' Exhibit C (Inmate Medical Records of William Lanier Ellis, Sr. - Summit Hospital Radiology Consultation Report of November 14, 2007) - Court Doc. No. 39-4* at 71.  The impression from this MRI indicated "[d]egenerative disk disease L4-L5, with broad-based central disk protrusion, eccentric to the right, associated with a transverse annular tear."  *Id*.  Based on this impression, Dr. Warr continued Ellis on his pain and anti-inflammatory medications and scheduled Ellis an appointment with a free-world neurosurgeon for evaluation.

Under the circumstances of this case, it is clear that the course of treatment undertaken by medical personnel at the Russell County Jail was neither grossly incompetent nor inadequate.  Although Ellis asserts that Dr. Warr should have provided a different mode of medical treatment, including but not limited to pain management via narcotic medications, this assertion fails to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for

some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment). It is undisputed that Ellis received significant medical treatment from various medical professionals as dictated by the actual status of his conditions at the time of presentation to health care personnel. Based on well settled law referenced herein, his mere desire for a different mode of medical treatment does not amount to deliberate indifference. Ellis has failed to present any evidence which indicates that Dr. Warr had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Ellis, that Dr. Warr actually drew this inference and thereafter ignored the risk. The record is devoid of evidence, significantly probative or otherwise, showing that those persons associated with the medical treatment provided to Ellis during his 2007 incarceration in the Russell County Jail acted with deliberate indifference to his medical needs. Consequently, summary judgment is due to be granted in favor of Dr. Warr. *Carter*, 352 F.3d at 1350.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The plaintiff's motion to dismiss be GRANTED and his claims against Tina Riley-Pelfrey, Danny Bussey, John Stihl and Loetta Holland be DISMISSED.

2. The motion for summary judgment filed by defendant Spud Warr be

GRANTED.

    3.  Judgment be GRANTED in favor of the defendants.

    4.  This case be dismissed.

    5.  The costs of this proceeding be taxed against the plaintiff.

    It is further

    ORDERED that on or before July 27, 2010 the parties may file objections to this Recommendation.   Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

    Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).   *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 14th day of July, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE